**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **NIKIA POPE, O/B/O C.K.L.L.,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **FRANK J. BISIGNANO, Commissioner of Social Security,** <br><br> **Defendant.** | ) | **NO. 5:26-CV-00075-MAS** |

**MEMORANDUM OPINION & ORDER**

Plaintiff Nikia Pope ("Pope") brings this action on behalf of her minor daughter, C.Z.L.L.[1] Pope appeals the Commissioner's denial of C.Z.L.L.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court addresses the parties' competing briefs. [DE 11; DE 15; DE 16]. For the reasons discussed below, the Court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that substantial evidence supports the decision. Accordingly, the Commissioner's final decision is affirmed.

[1] Consistent with Federal Rule of Civil Procedure 5.2(a)(3), the Court refers to the minor claimant by her initials. The Complaint identifies her as "C.K.L.L." [DE 1]. The administrative record and the parties' briefs reflect that her initials are C.Z.L.L. [TR at 86; DE 11; DE 15].

# I. LEGAL FRAMEWORK

## A. Standard of Review

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for

the parties' arguments.")]. Further, the Court may not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, the ALJ's findings are conclusive if they are supported by substantial evidence.

## B. CHILDHOOD DISABILITY DETERMINATION

"A disabled minor is an individual under the age of 18 who has an impairment or combination of impairments which meets, medically equals, or functionally equals a Listing of Impairments ('Listing') that is expected to last longer than twelve months." *Schout ex rel. D.S. v. Kijakazi*, No. 2:23-CV-091-DCR, 2023 WL 8850713, at *1 (E.D. Ky. Dec. 21, 2023) (citing 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.924(a)). The Commissioner has promulgated regulations setting forth a three-step sequential evaluation process for evaluating a child's claim of disability. 20 C.F.R. § 416.924. In summary, the evaluation proceeds as follows:

(1) Is the child engaged in substantial gainful activity?

(2) Does the child have a severe impairment?

> (3) Does the child have an impairment that satisfies the duration requirement and meets, medically equals, or functionally equals the criteria of a listed impairment within Appendix 1?

20 C.F.R. § 416.924(b)–(d). If the ALJ determines at any step that the child is not disabled, the analysis ends there. *Id.* at § 416.924(a). The claimant bears the burden of proof at Step Three. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

If the impairment does not meet or medically equal any listing, the ALJ will determine whether it results in limitations severe enough to functionally equal the listings. 20 C.F.R. § 416.926a(a). In making this determination, the ALJ considers the degree of limitation caused by the impairment in six broad areas of functioning called domains. *Id.* at § 416.926a(b)(1). The six domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. *Id.* at § 416.926a(b)(1)(i)–(vi). An impairment that results in "marked" limitations in two domains or an "extreme" limitation in one domain functionally equals the listings. *Id.* at § 416.926a(d). A "marked" limitation results if the child's impairment interferes "seriously" with her ability to independently initiate, sustain, or complete activities. *Id.* at § 416.926a(e)(2)(i). An "extreme" limitation exists when the impairment interferes "very seriously" with those same abilities. *Id.* at § 416.926a(e)(3)(i).

In the domain at issue here, the ALJ considers "how well a child is able to focus and maintain attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them." *Schout*, 2023 WL 8850713, at *4 (citing 20 C.F.R. § 416.926a(h);

SSR 09-4p). In evaluating each domain, the ALJ also considers how independently the child functions. This includes the help or adaptations she needs and the effects of structured or supportive settings. *See* 20 C.F.R. § 416.924a(b)(5).

## C. Evaluation of Medical Opinions

For claims filed March 27, 2017, or later, the agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Instead, the Commissioner "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." *Id.* at § 416.920c(b).

The ALJ evaluates five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* at § 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. Id. at § 416.920c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(1). They define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

While the ALJ is not required to articulate how he considered every factor, he must provide some analysis using at least the supportability and consistency factors. *See id*. at § 416.920c(b)(2). "The ALJ is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion." *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). Rather, "[t]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022).

## II. FACTUAL AND PROCEDURAL HISTORY

Pope filed an SSI application on C.Z.L.L.'s behalf on March 10, 2023. [Administrative Transcript[2] ("TR") at 86]. The application alleged that C.Z.L.L.'s disability began on June 25, 2018. [TR at 168]. Pope alleged disability due to "dyslexia, migraines and learning issues." [TR at 77; *see also* TR at 185]. The claim was denied initially on October 5, 2023, and on reconsideration on March 19, 2024. [TR at 68, 76, 86]. ALJ Antony Saragas conducted a hearing on March 17, 2025. [TR at 25, 86]. Pope and C.Z.L.L.'s grandmother, Monique Pope, appeared and testified. [TR at 26, 86]. C.Z.L.L. did not have an attorney or other representative at the hearing. [TR at 86].

---

[2] The Administrative Transcript is docketed at DE 5. The Court shall utilize the pagination generated by the Commissioner when referencing the Transcript.

C.Z.L.L. was born on June 25, 2012. [TR at 87]. By the time of the hearing, Pope testified that C.Z.L.L. was in the seventh grade. [TR at 36]. Asked whether her daughter was "on track to be promoted to eighth grade," Pope answered "[y]es." [TR at 36]. She described C.Z.L.L.'s grades as "mostly Cs." [TR at 36]. Pope also confirmed that C.Z.L.L. is "in small classes" and receives special education services. [TR at 38]. C.Z.L.L. is active, having played basketball "since sixth grade." [TR at 44]. Her grandmother testified that counseling "has taught her the calm-down mechanisms." [TR at 60].

The ALJ applied the three-step sequential evaluation for childhood disability claims. At step one, he found that C.Z.L.L. had not engaged in substantial gainful activity since the application date. [TR at 87]. At step two, he found that she has the following severe impairments: "learning, reading, math, and language disorders; neurodevelopmental disorder, attention deficit-hyperactivity and adjustment disorders, and conduct and oppositional defiant disorders." [TR at 87]. At step three, the ALJ found that her impairments did not meet or medically equal a listed impairment. [TR at 87–88]. He found C.Z.L.L. markedly limited in understanding, remembering, or applying information. [TR at 87]. But he found her no more than moderately limited in the remaining areas of mental functioning. [TR at 87–88].

The ALJ then considered whether C.Z.L.L.'s impairments functionally equal the listings. [TR at 88–92]. He found that she has:

- <u>a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;

- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for herself; and
- no limitation in health and physical well-being.

[TR at 89 (emphasis in original)]. Because C.Z.L.L. did not have marked limitations in two domains or an extreme limitation in one, the ALJ concluded that her impairments did not functionally equal a listing. [TR at 92]. He concluded that she "has not been disabled, as defined in the Social Security Act, since March 10, 2023, the date the application was filed." [TR at 92].

Pope, then represented by counsel, requested review by the Appeals Council. [TR at 5]. Counsel also submitted additional records, including records from Jessamine County Schools. [TR at 2]. The Appeals Council found that this evidence "does not show a reasonable probability that it would change the outcome of the decision." [TR at 2]. The Appeals Council denied review on January 14, 2026, which made the ALJ's decision the final decision of the Commissioner. [TR at 1]. This appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) followed. [DE 1].

## III. ANALYSIS

Pope asserts two claims of error. First, she argues that the ALJ failed to explain why C.Z.L.L. has less than a marked limitation in attending and completing tasks. [DE 11, Page ID# 812–15]. The ALJ had already found a marked limitation in acquiring and using information. [TR at 89]. Considering that two marked limitations establish disability, Pope believes this error is what stands in her way. 20 C.F.R. § 416.926a(d).

Second, Pope contends that the ALJ did not properly evaluate the opinion of consultative examiner P. Leanne Scott, MS, LPP. [DE 11, Page ID# 815–17]. Like her first argument, this one seeks a second marked limitation. Pope maintains that a proper evaluation of Ms. Scott's opinion would have supported that limitation and a finding of disability. [DE 11, Page ID# 817].

The Court addresses each argument in turn.

### A. ATTENDING & COMPLETING TASKS

As just mentioned, the ALJ found that C.Z.L.L. has less than a marked limitation in attending and completing tasks. [TR at 89]. Pope claims this is an error. In support, Pope attacks that finding on two fronts. First, she argues that the ALJ did not adequately explain the finding. [DE 11, Page ID# 812–13]. She also argues that the evidence shows a marked, or even extreme, limitation. [DE 11, Page ID# 813–14]. The Court takes the explanation first and then the evidence.

#### 1. The ALJ's Explanation Permits Meaningful Review.

Pope contends that the ALJ offered only "a brief summary of the educational and psychological records." [DE 11, Page ID# 812]. In her view, he gave no "specified reasoning as to why Claimant's ability to attend and complete task[s] is less than marked." [DE 11, Page ID# 812]. She relies on *Reynolds*, which instructs ALJs to "actually evaluate the evidence, compare it to [the relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011); [DE 11, Page ID# 812–13]. Pope also argues that the ALJ never considered the help and adaptations C.Z.L.L.

needs, as 20 C.F.R. § 416.924a requires. [DE 11, Page ID# 813; DE 16, Page ID# 841–42].

Pope's argument seeks the same "heightened articulation standard" the Sixth Circuit declined to impose in *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). *Reynolds* does not require a separate, self-contained explanation for each domain. A reviewing court may consider the ALJ's entire decision for sufficient factual findings and determine whether meaningful judicial review is possible. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three.").

Read as a whole, the ALJ's decision explains this finding. He began by evaluating the "whole child" by considering "how the claimant functions at home, at school, and in the community" and "the type, extent, and frequency of help the claimant needs." [TR at 88]. He also recognized that he "must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments." [TR at 89].

The ALJ then applied that plan. He acknowledged that C.Z.L.L.'s IEPs "mention distractibility with very elevated scores on inattention/defiance, 'very often' affecting her schoolwork." [TR at 90]. He described the school's supports as "conservative interventions, such as small group settings, 1:1 testing and extended time for assignments." [*Id.*]. And he found that "with these conservative measures,

the claimant is currently in the seventh grade and on track to procced [*sic*] to the eighth grade." [*Id.*].

This is the analysis Pope alleges is missing. The ALJ identified the help C.Z.L.L. receives and characterized its impact.

Finally, the ALJ also stated his conclusion and the basis for it. Namely, he explained that the record reflects "only less than marked limits in other attention, social, and self-care domains." [TR at 92]. He tied that conclusion to "the claimant's ultimate school performance/grades, daily activities and treatment history cited throughout this decision." [*Id.*]. And he found the state agency findings on attending and completing tasks "consistent with and supported by the evidence." [TR at 91].

Ultimately, while the ALJ could have drafted his opinion with more detail or precision, he "is not required to mention every piece of evidence but must [only] provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled[.]" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Here, the ALJ built that bridge.

**2. <u>Substantial Evidence Supports the Finding.</u>**

Pope's second line of attack goes to the evidence itself. She argues that "[t]he evidence clearly suggests Claimant has at least marked or extreme limitations with attending and completing tasks." [DE 11, Page ID# 814]. She relies on the regulation's example of a child who "require[s] extra supervision to keep [her] engaged in an activity." [DE 11, Page ID 814 (citing 20 C.F.R. § 416.926a(h)(3)(v))]. But the regulation cautions that its examples "do not necessarily describe a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a(h)(3). More importantly, the question

is not whether the record could support a marked limitation but whether substantial evidence supports the ALJ's finding of a less than marked one. Here, the Court finds the record does.

First, Pope's own testimony is revealing. Asked whether C.Z.L.L. was "on track to be promoted to eighth grade," Pope answered, "Yes." [TR at 36]. Pope described her daughter's grades as "mostly Cs." [*Id.*].[3]

Second, the medical evidence points the same direction. At her consultative examination, C.Z.L.L.'s "attention to task and concentration were fair." [TR at 432]. She "looked away at times and had to be redirected." [*Id.*]. Yet she "appeared to give adequate effort on all tasks, though she gave up easily on more difficult tasks." [*Id.*]. Mental status examinations at New Vista repeatedly recorded: "Attention and concentration adequate." [TR at 485, 500, 514, 530, 547, 579].

The state agency psychological consultant reached the same conclusion. At reconsideration, Wayne Herner, Psy.D., found a less than marked limitation in attending and completing tasks. [TR at 79–80].[4] Relying on a teacher questionnaire, he noted "no problem carrying out single step instructions, organizing own things or school materials, working at a reasonable pace, waiting to take turns, paying

---

[3] Pope's brief states that C.Z.L.L. "was not going to pass to move on to the eighth grade." [DE 11, Page ID# 805 (citing TR at 36)]. The transcript reflects the opposite. Pope testified that C.Z.L.L. is "not going to be like not pass the -- to the eighth grade." [TR at 36].

[4] The Commissioner attributes this finding to Christine Booth, M.D. [DE 15, Page ID# 833]. Dr. Booth, a pediatrician, signed the physical domain ratings and the overall disposition. [TR at 80–81]. However, Dr. Herner signed the mental domain ratings. [TR at 80].

attention when spoken to directly." [TR at 79]. He also acknowledged "[v]ery serious problems working without distracting self or others" and a "serious problem dealing with multitasking." [*Id.*]. Pope does not challenge the ALJ's reliance on this finding.

Third, while C.Z.L.L.'s school records are mixed, but they too support the ALJ. At her March 2025 IEP meeting, the teaching team reported that she "now uses her accommodations consistently and works well in groups and with peers." [TR at 311]. Though she sometimes "gets social and talks a bit," she "redirects well." [*Id.*]. The same IEP shows that she still needs prompting. At the start of the IEP cycle, she "followed directions with no more than one prompt with 33% accuracy." [TR at 312]. By its end, her accuracy had risen to 64%. [*Id.*; TR at 321]. A typical seventh grader is expected to "follow directions without additional prompting with 80% accuracy." [TR at 321]. These facts demonstrate meaningful progress with limited support. A reasonable factfinder could conclude that they reflects less than a "serious" interference with C.Z.L.L.'s ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

Pope relies on a school psychologist's report stating that C.Z.L.L. "may have poor concentration/attention" and "[m]ay be easily distracted." [DE 11, Page ID# 813 (citing TR at 355)]. But that language is not applicable to C.Z.L.L. It appears in a column titled "Common Characteristics of Students who obtain high scores." [TR at 355]. The ALJ acknowledged the elevated scores themselves. [TR at 90]. Pope also cites Ms. Scott's observations of redirection. [DE 11, Page ID# 813–14]. The ALJ discussed those too. [TR at 90]. More fundamentally, "'an ALJ is not required to

discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).[5]

In short, Pope asks the Court to reweigh the evidence. The Court declines. *Bass*, 499 F.3d at 509. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Substantial evidence supports the ALJ's finding that C.Z.L.L. has less than a marked limitation in attending and completing tasks.

### B. EVALUATION OF MS. SCOTT'S OPINION

Pope next challenges the ALJ's evaluation of Ms. Scott's opinion. [DE 11, Page ID# 815–17]. She argues that the ALJ failed to adequately explain why he declined to adopt the marked limitations Ms. Scott assessed. [DE 11, Page ID# 816–17]. Per Pope, had the ALJ properly evaluated the opinion, it would have supported a second

[5] Pope also describes a January 2024 fight at school and an altercation on a basketball court. [DE 11, Page ID# 807 (citing TR at 7, 21)]. These records were submitted to the Appeals Council after the ALJ's decision. [TR at 2, 7, 21]. The Appeals Council did not exhibit them. [TR at 2]. The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). The Court may remand for consideration of such evidence only if the claimant shows that it is new and material and that there was good cause for not presenting it earlier. *Cline*, 96 F.3d at 148. Pope does not seek a remand under sentence six of 42 U.S.C. § 405(g). Nor does she attempt either showing. Regardless, these incidents bear on C.Z.L.L.'s aggression rather than her attention.

marked domain and a finding of disability. [DE 11, Page ID# 817]. The Commissioner responds that the ALJ addressed both supportability and consistency. [DE 15, Page ID# 836–39]. He adds that Ms. Scott never assessed C.Z.L.L.'s ability to attend to and complete tasks. [DE 15, Page ID# 838]. The Court begins with the opinion itself and the ALJ's treatment of it.

Ms. Scott examined C.Z.L.L. in February 2024. [TR at 430]. She offered four conclusions:

> 1. [C.Z.L.L.'s] capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks appears affected by her mental health symptoms to a moderate to marked degree.
> 2. Her ability to participate in the area of learning appears affected by these impairments to a marked degree.
> 3. Her ability to communicate and socialize with adults and peers appears affected by these impairments to a moderate degree.
> 4. Slight deficits were noted in adaptive functioning.

[TR at 434].

The ALJ found the opinion "somewhat persuasive." [TR at 91].

> This opinion notes that the claimant's capacity to understand, remember, and carry out instructions toward performing simple, repetitive tasks appears affected by her mental health symptoms to a moderate to marked degree and her ability to participate in the area of learning appears affected to a marked degree are partially consistent with and supported by the evidence, as it documents the need for an individualized education plan, with the claimant's iReady diagnostic assessments describing the claimant's math score falling at the 1st percentile rank, an overall kindergarten level and her reading score falling at the 6th percentile rank, an overall first grade level. (Ex 1F). These degrees of limitation are also supported by the examiner's own findings of the claimant's intellectual functioning. However, "moderate" or less than marked limitations in the areas of participating in learning, ability to communicate and socialize and in adaptive functioning align better with the claimant's activities of daily living, her benefit from treatment and ability to achieve passing grades including promotion to her next grade level. (Hearing testimony, Ex 9F, 10F).

[*Id.*].

Pope calls this explanation "illogical articulation" that "does not satisfy the regulations' demands." [DE 11, Page ID# 816]. In her view, the ALJ ignored C.Z.L.L.'s ongoing academic deficits, her lack of improvement in intellectual functioning, and her aggressive behavior. [*Id.*]. Yet, in her reply, Pope concedes that "the ALJ addressed supportability and identified reasons why Ms. Scott's opinion was supported." [DE 16, Page ID# 842]. Regardless, Pope complains that the ALJ "provided no reasoning why, despite being supported, the decision was not found persuasive." [*Id.*]. She relies heavily on this Court's decision in *Eckert*. [DE 11, Page ID# 815, 817].

**1. <u>The ALJ Adequately Explained the Consistency Factor.</u>**

Supportability and consistency are separate inquiries. Supportability looks inward, to "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 416.920c(c)(1). Consistency looks outward, to "the evidence from other medical sources and nonmedical sources in the claim." *Id.* at § 416.920c(c)(2). An opinion may be well supported by the examiner's own findings and still conflict with the rest of the record. Nothing in the regulations requires an ALJ to adopt an opinion simply because it is supported. The ALJ must only "explain how [he] considered the supportability and consistency factors." *Id.* at § 416.920c(b)(2).

Pope's contention is that the ALJ did not explain the consistency factor. Pope directs the Court to its prior decision in *Eckert v. O'Malley*, No. 22-CV-316, 2024 WL 841765 (E.D. Ky. Feb. 28, 2024). There, the ALJ found portions of a medical opinion "somewhat persuasive as they were supported by a majority of the objective medical

evidence." *Id.* at *4. The Court could not "identify what specific medical evidence he utilized when devising how persuasive it was to his decision." *Id.* at *5.

The Court finds this case far different from *Eckert*. Here, the ALJ named the evidence and where to find it. Having credited the supportability of Ms. Scott's marked ratings, he turned to consistency. He compared her opinion against three specific categories of outside evidence: C.Z.L.L.'s "activities of daily living, her benefit from treatment and ability to achieve passing grades including promotion to her next grade level." [TR at 91]. He identified the sources for each: the hearing testimony and the New Vista treatment records. [*Id.* at 90–91]. Each category is discussed in detail elsewhere in the decision. [*Id.* at 89–90]. The ALJ noted that C.Z.L.L. "plays school basketball, has two close friends, understands basic safety rules and cooks, cleans and takes care of personal hygiene." [TR at 90]. He found that she "demonstrated a response to treatment" and had "reduced the number of days in which she is physically and verbally aggressive." [*Id.*]. And he noted that she was "on track to procced [*sic*] to the eighth grade." [*Id.*].

As Judge Reeves recently observed, a complaint "that the ALJ did not repeat this information in a specific section of the decision" does not establish error, because "an ALJ is not required to do so." *Slone v. Bisignano*, No. 5:25-445-DCR, 2026 WL 1453560, at *5 (E.D. Ky. May 22, 2026) (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016)).

And despite Pope's suggestion to the contrary, the ALJ did not ignore certain evidence. The ALJ expressly considered C.Z.L.L.'s academic deficits and her full-

scale IQ of 53. [TR at 88, 90]. In fact, such evidence is why the ALJ found her markedly limited in acquiring and using information. [TR at 92 (finding "'marked' limits in acquiring and using information, particularly considering the claimant IQ scores and learning deficits")]. He also considered her aggression. He found that her therapy records "demonstrate difficulties with the claimant becoming angry easily, and physically aggressive with others." [TR at 91]. This evidence led him to find her more limited than the state agency consultants in interacting with others and caring for herself. [*Id.*]. The ALJ "was not required to adopt the limitations [Pope] preferred or discuss the evidence in greater detail than necessary." *Slone*, 2026 WL 1453560, at *5. His explanation "enables the court to undertake a meaningful review." *Eckert*, 2024 WL 841765, at *5 (quoting *Terhune*, 2022 WL 2910002, at *3).

**2. <u>Any Error Would Be Harmless.</u>**

Even if the ALJ's explanation fell short, the outcome would not change. Ms. Scott's opinion does not support the second marked domain Pope needs.

Ms. Scott's two most restrictive ratings concern C.Z.L.L.'s ability to "understand, remember, and carry out instructions" and her ability to "participate in the area of learning." [TR at 434]. Per Pope, those abilities belong to the domain of acquiring and using information. [DE 16, Page ID# 845 (describing Ms. Scott's first limitation as "clearly identified within the regulations as aspects of the domain of acquiring and using information")]. The ALJ already found C.Z.L.L. markedly limited in that domain. [TR at 89].

Ms. Scott did not rate C.Z.L.L.'s ability to attend to and complete tasks, the domain Pope targeted above. [TR at 434]. Pope argues that learning also bears on

that domain. [DE 11, Page ID# 817]. But the domain concerns "how well a child is able to focus and maintain attention, and how well he begins, carries through, and finishes his activities." *Schout*, 2023 WL 8850713, at *4 (citing 20 C.F.R. § 416.926a(h)). On that subject, Ms. Scott said only that C.Z.L.L.'s "attention to task and concentration were fair." [TR at 432]. That observation does not suggest a marked limitation that Pope wants.

Thus, even if the ALJ had adopted Ms. Scott's opinion in full, C.Z.L.L. would still have only one marked domain. Any error in evaluating the opinion was therefore harmless. *See Eckert*, 2024 WL 841765, at *5 (an error is harmless where the record shows that "even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled" (quoting *Anderson v. Comm'r of Soc. Sec.*, 2012 WL 3139777, at *1 (W.D. Mich. Aug. 1, 2012))).

## IV. CONCLUSION

Upon consideration of the parties' respective briefs, a careful review of the record, and full consideration of the ALJ's decision, the Court finds no merit in Pope's arguments that the ALJ's decision should be reversed. The ALJ applied the correct legal standards, and substantial evidence supports the Commissioner's decision.

For all the reasons discussed above, and the Court being sufficiently advised, **IT IS ORDERED** that the final decision of the Commissioner denying the application for Supplemental Security Income filed on behalf of C.Z.L.L. is **AFFIRMED**. A separate judgment will follow.

Signed this the 9th of November, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY